# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In Re:                                                                                  BKY No. 18-43603

**Rivard Companies, Inc.,**

**Debtor.**

_____

## DEBTOR'S PLAN OF REORGANIZATION
_____

Debtor, Rivard Companies, Inc., hereby proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE I.
## DEFINITIONS

**A.    DEFINED TERMS.**

The following terms shall have the respective meanings hereinafter set forth. Any terms contained in this Plan that are not specifically defined shall have the meaning provided for in the Bankruptcy Code, unless the context otherwise requires.

1.  "Administrative Expenses" means Claims allowed under §503(b) and §507(a)(1) of the Bankruptcy Code and fees and charges assessed against a Debtor's estate under 29 U.S.C. §1930.

2.  "Allowed Claim," "Allowed Secured Claim," "Allowed Priority Claim" or "Allowed Unsecured Claim" means, respectively, a Claim, Secured Claim, Priority Claim, or Unsecured Claim against a Debtor to the extent that:

    (a)    a proof of such Claim was

        (i)    timely filed;

        (ii)   deemed filed pursuant to §1111(a) of the Bankruptcy Code; or

      (iii)    late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel for Debtor and the Creditors' Committee appointed in this Chapter 11 case; and

(b)    (i)    which is not a Disputed Claim; or

      (ii)    which is allowed (and only to the extent allowed) by a Final Order.

3. "Bankruptcy Code" means Title 11 of the United States Code, as amended.

4. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota or, in the event such court ceases to exercise jurisdiction over this Chapter 11 case, the Court having jurisdiction over this Chapter 11 case.

5. "Business Day" means any day other than a Saturday, Sunday, or a day on which banking institutions in the State of Minnesota are not open to conduct business.

6. "Cash" means Cash and Cash equivalents including, but not limited to, bank deposits, checks, and other similar items.

7. "Claim" means a claim as such term is defined in §101(4) of the Bankruptcy Code.

8. "Claimant" means the holder of a Claim.

9. "Claims Bar Date" means such date as established by the Bankruptcy Court or applicable bankruptcy rule as the last day to file a Claim.

10. "Confirmation Date" means the date on which the Confirmation Order is entered.

11. "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

12. "Debtor" means Rivard Companies, Inc.

13. "Disclosure Statement" means the Disclosure Statement that is approved by the Bankruptcy Court after notice and hearing and which accompanies this Plan.

14. "Disputed Claim" means a Claim asserted against a Debtor (i) to which an objection has been filed, or (ii) which has been scheduled as disputed, contingent or unliquidated and which has been resolved or allowed by Final Order, estimation or pursuant to this Plan.

15. "Distributions" mean, as the context may require, the Cash, notes or property required by the Plan to be distributed to the holders of Allowed Claims, or any Distribution thereof to such parties.

16. "Effective Date" means the first day of the first calendar month following the date on which a Final Order confirming this Plan is entered.

17. "Filing Date" means November 16, 2018.

18. "Final Order" means an Order of the Bankruptcy Court as to which (a) any appeal that has been taken has been finally determined or dismissed; (b) the time for appeal has expired and no notice of appeal has been filed.

19. "Interest" means the shareholder interest of any shareholder in Debtor.

20. "Plan" means this Debtor's Plan of Reorganization, as the same may be amended or modified.

21. "Reorganized Debtor" means the Debtor following the Confirmation Date.

22. "Schedules" means the schedules of assets and liabilities of Debtor on file with the Clerk of Bankruptcy Court for the District of Minnesota, as from time to time amended in accordance with Bankruptcy Rule 1009.

23. "Secured Claim" means any Claim in respect of which a valid lien, security interest or encumbrance is held in any assets of Debtor.

24. "Unsecured Claims" means all unsecured non-priority Allowed Claims against any Debtor, including any deficiency claim of the holder of a Secured Claim and any Claim arising from the rejection of any executory contract or unexpired lease of the Debtor. Unsecured Claims do not include any deficiency Claim of the holder of a Secured Claim if said Claim is non-recourse and the security is sold or tendered to the holder of the Secured Claim.

**B.   UNDEFINED TERMS.**

A term used and not defined herein which is defined in the Bankruptcy Code shall have the term defined therein, unless the context clearly requires otherwise. A term not defined herein nor defined in the Bankruptcy Code shall have its normal meaning, unless the context clearly requires otherwise.

## ARTICLE II.
## TREATMENT OF CERTAIN CLAIMS AND EXECUTORY CONTRACTS

Allowed Claims that are not classified shall be treated as follows:

a. Allowed Administrative Expenses, except as otherwise classified herein, and including fees of professionals, shall be paid in full, in cash, on the Effective Date or as soon as practicable thereafter, or on such other date as the Court may fix, or in the ordinary course of business as the Claims mature, or upon such other terms as may be agreed upon by each Claimant and Debtor. Debtor estimates that total claims for professional fees will be approximately $30,000.00.

b. Unpaid post-petition Administrative Expense Claims incurred in the ordinary course of Debtor's business will be paid as such Claims become due, as agreed between each Claimant and Debtor, or otherwise in the ordinary course of Debtor's business.

c. All Executory contracts or unexpired leases, on the Effective Date, as herein defined, will be deemed rejected unless the Debtor has separately filed motions to assume an executory contract or lease.

d. Holders of Allowed Claims specified in Bankruptcy Code §507(a)(8) (certain taxes), will be paid in accordance with 11 U.S.C. §1129(a)(9)(C), at an interest rate equal to 5% per annum. The Debtor believes there are two (2) claims in this category. One is held by the Internal Revenue Service. The other is held by the Minnesota Department of Revenue.

e. Fees payable by the Debtor under 28 U.S.C §1930 will be paid in full, in cash, on the Effective Date. The Debtor will continue to report its monthly disbursements and make payments to the U.S. Trustee until no longer legally obligated to do so.

## ARTICLE III.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

The Debtor's Plan of Reorganization has the following classified claims and interest:

A. Description and Treatment of Classes of Claims

1. **Class 1 Claim – Itria Ventures, LLC**

   This Class consists of the Allowed Secured Claim of Itria Ventures, LLC ("Itria"). The Debtor has a Future Receivables Sales Contract with Itria dated August 30, 2017.  Itria has a security interest in the Debtor's property, including all present and future accounts, chattel paper, depots accounts, documents, general intangibles, equipment and inventory and all proceeds of such property.  This Claimant filed a UCC Financing Statement with the MN Secretary of State on September 5, 2017.  As of the Petition Date, the amount due Itria was $89,300.00.  The balance due Itria as of June 10, 2019 is $35,500.00.  The Debtor and the Class 1 creditor entered into an adequate protection agreement by filing a Motion for Continued Use of Cash Collateral and for Adequate Protection (Doc. No. 69) dated February 11, 2019.  The Motion was approved by an Order of the Court on February 27, 2019 (Doc. No. 84).  The Debtor's use of cash collateral is set to expire on August 30, 2019.   The terms of the adequate protection agreement are as follows:  The Debtor has agreed to pay $5,000 to Itria on or before March 20, 2019 and $15,000 per month thereafter beginning on or before April 20, 2019; May 20, 2019; June 20, 2019; July 20, 2019; and August 20, 2019.  The payment described herein will constitute a full and final settlement of all Claims held by the Class 1 creditor.  The Class 1 Creditor will release all liens, security interests and encumbrances against the property securing the Class 1 Claim following receipt of payment from the Debtor.

2. **Class 2A Claim – Secured Claims of Caterpillar Financial Services Corporation**

   This Class consists of the Secured Claim of Caterpillar Financial Services Corporation ("CFSC") arising from that certain Finance Lease dated March 2017. This Claim is secured by a 926M Wheel Loader (S/N LTE00304); Fusion Quick Coupler; GP Bucket; and LM Bucket (together, the "926M Loader").  This Claimant filed a UCC Financing Statement with the MN Secretary of State on March 30, 2017.  As of the Petition Date, the amount due CFSC was approximately $146,599.88. The Debtor and the Class 2A creditor have entered into a Stipulation and Agreement dated March 11, 2019 (Doc. No. 95).  The Stipulation and Agreement were approved by and Order of the Court dated March 26, 2019 (Doc. No. 106).  The terms of the Stipulation required the Debtor to make is regular monthly payments in the amount of $2,866.60 beginning in April 2019 and shall remain in effect until the Lease is paid in full.  This Plan proposes that the Debtor continue to make the payments until the Claim is paid in full.

**Class 2B Claim – Secured Claim of Caterpillar Financial Services Corporation**

This Class consists of the secured claim of Caterpillar Financial Services Corporation ("CFSC") arising from that certain Installment Sale Contract dated February 13, 2015, for the purchase of a Caterpillar 297D Multi Terrain Loader (S/N HP700235).  CFSC is the assignee of the Sale Contract.  Mike, Rivard, the Debtor's CEO, the Transferee of the Assigned Contract and the Assigned Financed Equipment pursuant to a Transfer and Assumption Agreement dated November 30, 2016.  This Claimant filed a UCC Financing Statement with the MN Secretary of State on February 5, 2015.  As of the Petition Date, the amount due CSFC was approximately $15,588.92. The Debtor and the Class 2B creditor have entered into a Stipulation and Agreement dated March 11, 2019 (Doc. No. 95).  The Stipulation and Agreement were approved by and Order of the Court dated March 26, 2019 (Doc. No. 106).  The terms of the Stipulation require the Debtor to make regular monthly payments in the amount of $2,124.49 beginning in March 2019 and shall remain in effect until the Lease is paid in full.  This Plan proposes that the Debtor continue to make the payments until the Claim is paid in full.

**Class 2C Claim – Secured Claim of Caterpillar Financial Services Corporation**

This Class consists of the secured claim of Caterpillar Financial Services Corporation ("CFSC") arising from that certain Installment Sale Contract dated August 3, 2018, for the purchase of a Caterpillar 938M Wheel Loader (S/N J3R05868).  This Claimant filed a UCC Financing Statement with the MN Secretary of State on July 16, 2018.  As of the Petition Date, CFSC was owed approximately $201,401.26. The Debtor and the Class 2C creditor have entered into a Stipulation and Agreement dated March 11, 2019 (Doc. No. 95).  The Stipulation and Agreement were approved by and Order of the Court dated March 26, 2019 (Doc. No. 106).  The terms of the Stipulation required Mike Rivard to make a payment in the amount of $5,099.08 on March 20, 2019, April 1, 2019 and April 15, 2019 and then on a monthly basis beginning in May, 2019 and shall remain in effect until the Lease is paid in full, except for the skip months as specified in the Stipulation, which are:  December, January and February of each year until the Lease is paid in full.  This Plan proposes that the Debtor continue to make the payments until the Claim is paid in full.

3. **Class 3 Claim – Secured Claims of RP Financial, LLC and Lake Area Bank**

   This Class consists of the Secured Claims of RP Financial, LLC and Lake Area Bank ("RP").  The Debtor has an Equipment Lease Agreement, Lease No. 01495-02, dated October 24, 2018.  This Claim is secured by:  One (1) 2015

Model 3680 Trail, S/N 4FMUS4738GR501248 w/Caterpillar C18, 765HP Engine w/o Clutch, S/N WRH07852 for a period of 60 months with monthly payments of $13,995.  Additional equipment owned by the Debtor is also pledged to RP to further secure the Lease.  The additional equipment is: One (1) 2007 Morbark 4600XL Grinder on Tracks, S/N 188-1042; One (1) 2008 Isuzu, NRR, Dump Truck, VIN JALE5W16587300969; One (1) 2011 Caterpillar, 906H Loader, S/N SDH00984; and One (1) 1997 Kenworth, T800B, Dump Truck, VIN 1NKDX95X9VJ753016.   This Claimant filed a UCC Financing Statement with the MN Secretary of State on November 2, 2018.  The Debtor and RP entered into an Amended #1 to the Equipment Agreement #01495-02 on February 22, 2019 ("Amendment").  The Debtor and the Class 3 creditor have entered into an adequate protection agreement by filing a Motion with the Bankruptcy Court dated February 27, 2019 (Doc. No. 83).  The Motion to Approve Adequate Protection Agreement between the Debtor and RP was approved the Court Order dated March 26, 2019 (Doc. No. 105).  The terms of the Motion require the Debtor to make its regular monthly payments in the amount of $13,995.00 beginning in February 2019 and shall remain in effect until the Lease is paid in full.  This Plan proposes that the Debtor continue to make the payments until the Claim is paid in full.

4. **Class 4 Claim – Secured Claim of Village Bank**

This Class consists of the partially Secured Claim of Village Bank ("Village").  The Debtor has not entered into an adequate protection agreement with Village Bank.  Village Bank has filed a Claim, Claim No. 25, on March 18, 2019, in the amount of $1,985,325.92.  Village Bank has valued its collateral in the amount of $200,000.  The Debtor will pay Village Bank $200,000 by making equal monthly payments with interest at 5% per annum.  The monthly payments will be in the amount of $10,000.  The payments will commence on the Effective Date.  The balance of the Village Bank Claim will be treated as an Unsecured Claim in Class 5.

5. **Class 5 Claim - Unsecured Claims**

This Class consists of the Claims of Debtor's Unsecured Creditors.  This Class also includes Under Secured Claims held by any equipment lenders or lessors such as Shamrock Development, Inc. and Village Bank.  The Debtor estimates that the total Claims in this Class 5 equals the sum of approximately $3,480,000.00.  Several of the Claims in this Class are disputed by the Debtor who intends to pursue Claim Objections.  The payments described to the Class 5 creditors will represent full, complete and total satisfaction of the Claims of the Class 5 creditors.  The proposal in this Plan is to pay Unsecured Creditors 50% of their Allowed Claims, payable over ten (10) years in an amount equal to 5% of each Allowed Claim per year.  Payments will be made in calendar years 2020

through 2029.  The payments described herein will constitute a full, complete and final settlement and satisfaction of all Claims held by the Class 5 creditors.

6. **Class 6 Claim – Shareholders Interests**

   This Class consists of the shareholder interests in the Debtor.  The shareholders of the Debtor are Michael Rivard and Lisa Rivard.  The Shareholders will retain their Ownership interest in the Debtor.

## ARTICLE IV.
## CLASSES OF CLAIMS AND INTERESTS IMPAIRED UNDER PLAN

Classes 1 – 3 and 6 are unimpaired under this Plan.  Classes 4 and 5 are impaired under the Plan and are entitled to vote on the Plan.

## ARTICLE V.
## GENERAL PROVISIONS

1. Payments under this Plan will be made by check, mailed with first class postage prepaid, to the Claimant at the address listed on its Proof of Claim or, if no Proof of Claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules.

2. Payments and other distributions under this Plan will be made as soon as practicable on or following the Effective Date, except as otherwise specified in this Plan.

3. In the event a payment is returned to Debtor unclaimed, with no indication of Claimant's forwarding address, Debtor will hold such payment for a period of six months from the date of return.  If not claimed by the Claimant by the end of that period, the payment shall become the property of Debtor.

4. In the event this Plan is not confirmed under Bankruptcy Code §1129(a), Debtor requests that this Plan be confirmed under Bankruptcy Code §1129(b).

5. Debtor reserves and retains the right after confirmation to pursue any claims against third parties, including preference and fraudulent transfers.

6. Debtor shall have the right to prepay any obligation under this Plan without penalty.

7. The Debtor is pursuing a Plan to continue its business operations subsequent to approval of this Plan of Reorganization.  The Debtor anticipates no adverse tax consequences as a result of the Court confirming the Plan of Reorganization.

## ARTICLE VI.
## MEANS FOR EXECUTION OF PLAN

The Debtor will pay Administrative Expenses, in cash, upon Confirmation of the Plan or upon such terms as may be agreed by the Debtor and the Administrative Claimant.  The Debtor will pay Priority Unsecured Claims, if any, in cash on the Effective Date.  The Debtor will pay Priority Tax Claims, if any, over a period of six years, in monthly payments at 5% interest, from assessment in accordance with 11 U.S.C. §1129.  The Debtor will make payments to its creditors from its ongoing operations.  Subsequent to Court approval of this Plan, the management of the Debtor will be provided by Michael and Lisa Rivard.

## ARTICLE VII.
## CONTESTED CLAIMS

No payment shall be made under the Plan with respect to a Disputed Claim, unless estimated by the Court for such purposes, until the disputed Claim becomes an Allowed Claim, by agreement of the parties to any Claim disputed or by Final order of the Court.  As soon as practicable after the Allowed Claim is established by agreement or final order, Debtor shall pay to the holder of such Allowed Claim the amount provided in the Plan.

## ARTICLE VIII.
## MODIFICATION OF THIS PLAN

Debtor may amend or modify this Plan in the manner provided for under Bankruptcy Code §1127(a) or (b).  Debtor shall give notice of any proposed modification to Counsel for the Committee and to the United States Trustee and to any other parties designated by the Court.  Debtor also reserves the right to make such modifications at any hearings on confirmation as are necessary to permit this Plan to be confirmed under Bankruptcy Code §1129(b).

## ARTICLE IX.
## CONTINUING JURISDICTION

The Bankruptcy Court shall retain jurisdiction until this Plan has been fully consummated for the following purposes:  classification of the Claims of creditors and allowance of the Claims of creditors; allowance of Claims for damages from the rejection of executory contracts or unexpired leases; determination of all questions and disputes regarding title to the assets of the estate and determination of all causes of actions between Debtor and any other party, <u>including but not limited to any right of Debtor to recover assets pursuant to the provisions of the Bankruptcy Code</u>; any pending litigation, correction of any defect, the curing of any omission or the

reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purpose and intent of this Plan; interpretation and enforcement of the terms of this Plan; shortening or extending, for cause, of any time fixed for doing any act or thing under this Plan; entry of any Order, including any injunction, necessary to enforce the title, rights, and powers of Debtor; and entry of an Order concluding and terminating this case. The Court may exercise its jurisdiction after notice and hearing or ex parte, as the Court determines to be appropriate.

Except as recited above, all liens, security interests, encumbrances and mortgages held by any creditor of the Debtor will be released and discharged on the Confirmation Date. The Debtor will retain ownership interest in its property, free and clear of all security interests, claims, liens and encumbrances.

Dated: July 1, 2019.

RIVARD COMPANIES, INC.

By _____
Michael Rivard, Its CEO